May it please the court, my name is Allison Holcomb on behalf of Plaintiff Garrick Harrington. I will be addressing Mr. Harrington's 14th Amendment claim and my colleague Abe Tvei will be addressing Mr. Harrington's 8th Amendment and Appointment of Counsel claims. For several months in 2004, Mr. Harrington was subjected to lockdown procedures at Corcoran State Prison simply because he was African American. As a result of this lockdown policy, Mr. Harrington suffered a back injury as the result of a fall while being escorted to the shower. During the trial of Mr. Harrington's 14th Amendment claim, based on this incident, the jury was instructed to apply the incorrect standard to Mr. Harrington's 14th Amendment claim. Well, didn't the court apply the Norwood standard or not? They applied the Norwood standard, which is not applicable to a 14th Amendment claim. Why? In Norwood, the court was clear to state that they were not considering an equal amendment or race-based classification in only the 8th Amendment claim. And this Court in Johnson has made it clear that when a race-based classification is at issue, deference, which was the instruction from Norwood, is not appropriate. Are we on plain error standard or not? We would say that we're on harmless error, Your Honor, because of the objection that was made by Mr. Harrington during the discussion of the jury instructions. When the court was reviewing the jury instructions with the parties outside of the jury's presence, the court read the Norwood instruction. The judge began to move on to the next instruction, and Mr. Harrington said, excuse me. When the court tried to keep going to the next instruction, he, Mr. Harrington, brought the court back to the issue, and he said, Your Honor, about the previous instruction, the Norwood instruction, I was unclear on that previous instruction. That was not the strict scrutiny instruction. Then the court said, you are right, and told him that he would be reading first the correct strict scrutiny instruction that required the jury to apply strict scrutiny and make a finding that the policy issue was narrowly tailored, and then read the Norwood instruction in combination. The combination of those instructions is an incorrect statement of the law. If you were trying the case, would you use the word unclear or would you say I object? I would, as a lawyer, say I object. But as an incarcerated pro se litigant, I believe saying that he was unclear and stating that it was not the strict scrutiny instruction is adequate to preserve the issue for appeal. And let me go back to the jury instruction, because I think this is what bothers me most about this case, is they give – there is an accurate strict scrutiny instruction. Do you agree with that? Agreed.  And so your contention is that the Norwood instruction collides with that in basically kind of pulling out the rug from underneath the strict scrutiny instruction? Correct. It lowers the standard by asking the jury to give deference to the prison official's opinion, which is not a – which is acknowledged as a lower standard in Johnson, that a deferential standard is not strict scrutiny. And in your view, when you have a race-based case, how does the situation of the fact that the prison system has to run a prison, how does that fit in to the strict scrutiny analysis? Under Johnson, the Supreme Court was clear that even in the prison context, strict scrutiny without deference is the appropriate standard. They acknowledge that there are situations where certain prison policies may survive strict scrutiny if a showing of narrow tailoring is made, but simply because the race-based policy exists within the prison context, it's not enough to give deference from the beginning. They still must be applying the same standard to the policy. So then I had a question about the verdict form, which has another odd aspect to it, which maybe the jury didn't need to answer, but they did answer.  So my first question is, what's your position on whether, in fact, we can, like, take the scissors after the jury answered the first question and ignore the rest of the verdict form, or whether we need to look at the verdict form as a whole? I think it's important to look at the verdict form as a whole because of the deficiency, which was that the verdict form question is apparently a qualified immunity question, and the jury was not instructed on qualified immunity. So therefore, they received a verdict form and answered the question that simply asked whether or not the prison officials had acted reasonably, which, again, is a lower standard than the strict scrutiny standard that Johnson requires. So without the proper instruction on how qualified immunity should be applied, it seems, again, to be another way, another exit for the prison officials to have a lower standard applied to their race-based policy. Is there a waiver issue on that? On the verdict form? With respect to the verdict form. Mr. Harrington did not object below to the verdict form, but we would argue that it's under Rule 51's plain error analysis. It's essentially a jury instruction issue as well, because it was the deficiency is really a missing jury instruction on qualified immunity. So therefore, we could review, it's possible to review it under a plain error analysis. If there are no other questions, I'd like to concede my time to my colleague on the rest of Mr. Harrington's case. Can we do so, counsel? Good morning, Your Honors. Abe Dubai on behalf of Mr. Harrington. Mr. Dubai. As a result of defendant's racially discriminatory practice, Mr. Harrington was forced to wade through water in treadless slippers, handcuffed, and with no support. He fell and hurt his back and brought an Eighth Amendment claim. At trial, Mr. Harrington requested an instruction explaining that a known risk of harm can be proved by circumstantial evidence, particularly the obviousness of the risk. The district court erred by refusing to provide such an instruction. Mr. Harrington was entitled to a jury instruction on S, the theory of his case. Having relied on evidence tending to show that the risk of harm was obvious to prove the defendant's actual knowledge, and because the Supreme Court specifically indicated that actual knowledge can be proved through circumstantial evidence, including obviousness of the risk, Mr. Harrington was entitled to such an instruction. He proposed that instruction. Instead of providing it, the district court only instructed the jury that a defendant had to act with deliberate indifference to a known harm. The jury, during deliberations, asked a question of the judge saying, what is a serious risk of injury? Please define. Is the fact that the areas around all the showers are always wet constituting a serious risk of injury? At that point, instead of answering the question, the district court indicated that it would refocus the jury and re-refer them to the instructions. And instead of explaining what a substantial risk of harm is, the judge stressed six different times that the risk had to be known. At that point, Mr. Harrington said, Your Honor, knowledge can be demonstrated of the substantial risk simply because it was obvious. And then he said that by focusing on the knowledge aspect, he requested an additional instruction as to the obviousness. The district court rejected that instruction and proceeded to refocus the jury on the knowledge requirement. That was an error, and the error was not harmless. Defendants have made two arguments to rebut this knowledge instruction argument. First, that Mr. Harrington did not object properly. However, we've cited cases that show, both in the Ninth Circuit and in other circuits, that when someone objects during a clarification question, that preserves the objection for appeal. Moreover, the sole harmlessness objection that defendants have is that the judge said that Mr. Harrington, as a matter of law, did not prove a serious risk of injury. That's just not true under the Ninth Circuit case law. Under Frost v. Agnos, slippery conditions combined with special circumstances can create a substantial risk of harm. The cases cited by the defendants, Jackson and Lemire, only say that slippery floors without anything else do not create deliberate indifference. What's our standard of review on the instructions? Is it abuse of discretion or some other standard? Your Honor, we would – we would – our position is that because Mr. Harrington is entitled to an instruction as to the theory of his case, and because Farmer v. Bredin provides that obviousness can be – can prove actual knowledge, that this was an incomplete and therefore incorrect instruction, and that – and that it's de novo review and harmless error standard. Say it again. De novo review. De novo review, I meant if the error is harmless or if the error was harmful. But even under the abuse of discretion standard, we would argue that it was an abuse of discretion to not provide Mr. Harrington an instruction consistent with his theory of the case. If there are no further questions, I'm done, Your Honor. Thank you very much, counsel. We will hear from the State. Good morning. Jose Zola-Lanzapeta for defendants. I wanted to start by addressing the scissors question, for lack of a better word, that Judge McEwen asked. You asked if on the verdict form whether this Court can disregard the jury's answer to a question or just cut it off and say, well, the jury didn't need to answer those questions. There's a case that's cited in our answering brief, Floyd v. Laws, that makes it pretty clear that if the jury is given a special verdict question and the special verdict says if you answer no on question number one, you don't need to answer anything else, for example, and that's what the jury was given over here, and in those cases, the jury's answer to the rest of the questions, because they're not necessary for the verdict. Floyd v. Laws is a case. I wanted to go ahead and address the interplay between the strict scrutiny and the Norwood instruction. First of all, I wanted to go ahead and emphasize that the issue was waived because the plaintiff did not raise any objections to the jury instructions under Rule 51. In any event, there is no conflict. The Supreme Court in Johnson held that strict scrutiny applies to racial classifications even in prison. In so doing, it said rather than defer to prison officials and adopt the lower Turner v. Sackley standard in the prison context, which applies to most other prison conditions, we're going to apply strict scrutiny. That's the extent that the Court's holding. It did not say that the deference that's accorded to prison officials in terms of assessing safety and security concerns, and that predates Norwood. That goes back to Pell v. Procurnier, Pell v. Wolfish. The Supreme Court did not undo that. Well, let me ask you about that, because what the Supreme Court did say in Johnson is they said that deference to prison administrators is fundamentally at odds with our equal protection jurisprudence. And it seems to me that your statement that you just made doesn't comport with the Supreme Court's characterization in Johnson. Your Honor, I think that's footnote 1 in Johnson, and that is the majority answering Justice Thomas' dissent saying that in adopting the strict scrutiny standard that the majority was basically doing away with Turner v. Sackley deference, it was not addressing the more underlying, the other underlying deference, the different When judges and juries, this is from Norwood, when judges and juries are confronted with a situation where they're assessing the propriety of the regulations or the actions or the policies of prison officials that pertain to safety and security, courts and the juries should go ahead and defer to the prison officials because of their expertise. So that's an Eighth Amendment case, correct, Norwood? Norwood was an Eighth Amendment case. Okay. And so the jury instruction here says there's competing obligations between, in effect, deference and strict scrutiny. Do you have any? Is there any Supreme Court case that says that? I mean, it seems to me that it's this competing obligations language that runs headlong into the strict scrutiny standard of Johnson. Well, what the district court was trying to get across to the jury was the fact that the equal protection context, the equal protection claim does not happen in a vacuum, that prison officials had other constitutional obligations that they had to take into account when trying to figure out the appropriate way to face the situation. But how is a jury supposed to figure this out when it's a strict scrutiny standard? The jury is supposed to find out if the State met its obligation to show that, yes, they needed a race classification and it was narrowly tailored. Do you agree that that's a correct statement of the law? That is correct, Your Honor. And wouldn't you be able to show under narrow tailoring potentially that this is narrowly tailored because we have various security concerns in the prison, correct? That is correct. But that's not the same as saying that deference is a competing obligation to strict scrutiny, at least as I read the cases. Maybe you can elaborate differently if that you have a different view. And I'm sorry if I misspoke. And I didn't imply or meant to say that the deference is to the ‑‑ it really comes down to where is the deference, what is it that the judges and the juries are deferring to. In this situation, the jury was asked to apply strict scrutiny standard, and they did. The jury instructions reflect that. The jury verdict form reflects that. But at the same time, in this whole context, the court was also instructing the jury that when you're assessing what the security concern here was, which was the report that unaffiliated inmates were planning to murder staff and the fact that there were these other assaults on staff as well as inmate assaults, that in assessing whether there was a particular need for something, for a particular policy or restriction, that the jury should not be second-guessing and say, well, maybe they didn't need it. I mean, that's ‑‑ it seems to me where the rubber hits the road in this race case. I totally credit with what you're saying about it being a serious situation and there needs to be, obviously, appropriate action taken. But the jury ‑‑ the jury is told it needs to be narrow tailoring, but then it's told on the other hand, but this is really competing. And so it seems to me that in a way that you untie the bow from strict scrutiny when you have your Norwood instruction. And what you're saying is, well, the jury needs to take into account deference. So my question is, well, where ‑‑ where do they take that into account? How does that work? The jury can apply strict scrutiny by saying, well, this is the reason why prison officials felt that they had to take this particular action in this situation. It was a period that was very violent in 2004 at Corcoran Street Prison. And then the jury could go ahead and listen to the prison official's explanation of why they did that. But then after listening to that explanation can say, well, do we think, as a lay person using common sense, do we think that this met the strict scrutiny standard? Was that good enough under the strict scrutiny standard? And in this case, the jury said yes. Well, the jury instruction, the Norwood instruction is pretty strong in this case because it says in considering whether they discriminated against Clint because of his race, you should consider that the defendants had a competing obligation under the Eighth Amendment to ensure safety. I mean, Norwood doesn't say that. Norwood has nothing to do with the Fourteenth Amendment. No, no. Norwood was in the Eighth Amendment case. Right. Do you have a Fourteenth Amendment case in which a court approved this type of instruction? No, Your Honor. I did some research and I haven't found situations where in the – it's a very unusual case because, first of all, most of the cases that deal with the Norwood type of instruction, the deference instruction, arise in the summary judgment context and very few in the district court context. But I'd submit to the Court that that – what that shows is that the plaintiff cannot then show plain error, assuming that there was an error, that the plaintiff cannot show that it was plainly erroneous for the district court to give this instruction. There is no case law holding that the deference instruction is not appropriate in an equal protection case. Well, except Johnson. I mean, Johnson basically rejects that. Johnson was not a jury instruction case. It was on summary judgment and going back to the distinction. Why does that make any difference in terms of law? Because we're talking about how the – Johnson held that the standard is strict scrutiny for racial classifications. The district court provided that instruction here. Johnson did not address whether – whereas – whether this previous case that the Supreme Court and other courts have regarding the deference that's due to prison how the jury is supposed to apply the strict scrutiny standard in the prison context. No court has held that to my knowledge. And because of that, there can't be a plain error. Why can't it be plain error if it's a – if it's a misstatement of the law? Because you – just because it hasn't even had this precise formulation, you can't get much closer than Johnson to telling – I appreciate what the judge is trying to do. I mean, it makes sense. But, of course, he's dealing with this pro se person. And so I appreciate what he's trying to do. But just because he does something that's at odds with the law and there's not a prior case precisely in point, that doesn't mean that it's not plain error under the law, does it? No, not necessarily, Your Honor. Although there is – It's not like we're in Edpin land where we need to have a precise Supreme Court formulation. That actually was the context that I was thinking about, the difference between Edpin as opposed to how the Court reviews an issue on direct review. But I think that brings up, again, the underlying question. And I submit to the Court that it isn't apparent or clearly erroneous that deference doesn't apply in the eighth amendment context. Johnson said strict scrutiny applied with the district court. It was – this really comes to what the interplay between the two are – is, how the deference, which is clearly established from the law, and the strict scrutiny standard apply in the jury context, and how courts should accommodate the two concerns so that the jury can take both into account. Well, why isn't it taken care of in terms of narrow tailoring? I mean, it seems to me it's complete in and of itself, isn't it? There's not the argument of narrow tailoring that you have – you weigh the competing government interests and determine whether or not the response is narrowly tailored. See, this instruction, to me, just guts the strict scrutiny. I mean, I don't see how you can get from strict scrutiny when you say – and when you're considering strict scrutiny, you've got to give respect and deference to the opinion of prison officials and, you know, in their execution of policies. That's not strict scrutiny. That's deference. It's deference to the need for the policy, but not to whether the policy was necessary to address a serious concern or whether it's narrowly tailored, Your Honor. Yeah. What about the instruction on – as to the obviousness and circumstantial nature of the conditions around the shower? On the slip-and-fall claim, Your Honor, in this case, plaintiff got a theory – got a jury instruction consistent with his theory of the case. His theory of the case in the complaint and numerous other pleadings below was that defendants knew about this risk. He used the word known. He used the word willful. And actually, I was looking at some of his proposed jury instructions below. He had a jury instruction that was basically consistent with what the district court initially gave to the jury on this particular aspect of the case. It seems from the record that basically when the jury asked this question after they had already been instructed during this colloquy that the plaintiff became aware to the fact that maybe his theory of the case had now changed and his theory was now that defendants should have known. But under the circumstances, the district court did not err in giving the jury instruction that it did because that was the plaintiff's theory of the case. The plaintiff, in any event, as with the previous issues, plaintiff did not risk contemporaneous instruction – error, contemporaneous objection to the jury instruction on deliberate indifference, so this Court would have to review for plain error. And it wasn't plain error in any event because it was consistent. There's also a further problem with that claim, and that's the fact that it was under the case law a slip and fall does not become a constitutional claim just because it happens to an inmate in prison. The case law makes clear that it has to be pretty extreme situations. In this case, plaintiff, all he had was he submitted testimony that another inmate had fallen in the same type of situation – in the same unit a few weeks before. There was no evidence that this other individual fell down because of the water. There's no evidence that any of the defendants knew that there were any of the special circumstances that this Court has said are required in order to take – in order to make a slip of falling to a constitutional violation. We cited cases in our brief. There's a case out of circuit called Reynolds that basically sums up the case law and says that these types of cases, unless there's extreme situations or there's obvious indications that would make it clear to a prison official that there was a known risk that – or that there was a substantial risk of injury, that that does not become a constitutional violation. Right. I understand your theory of the case, but his theory was, in part, that it was obvious and that the instruction didn't go far enough in saying that you can take circumstantial evidence into account in proving obviousness. That was his theory, if at all, after the jury had the jury question, Your Honor, not when the jury was first instructed. His theory throughout his pretrial statement, his proposed jury instruction, was that defendants knew. That's language from his complaint as well. He uses the word willful. He uses the word – I think he might even use the phrase actual knowledge. And given that, the district court gave the instruction that it did and plaintiff had an opportunity to voice his objection before the jury was instructed, rather than wait until he changed his theory of the case midway when, after the jury had started its deliberation. Thank you, counsel. Your time has expired. Thank you, Your Honor. There is some time for rebuttal. Who will be doing the rebuttal? Ms. Holcomb. I'd like to actually begin with the Eighth Amendment claims and to respond to some of the points that opposing counsel brought up. First of all, Mr. Harrington's theory of the case never changed. He actually submitted a jury instruction based on the case Farmer v. Brennan, which stated that both subjective and objective inquiry into the existence of knowledge are ways to prove knowledge. And this excerpt to the record 449 is where this jury instruction was rejected. So this theory remained his theory throughout the case, and it was just clarifying this point during the jury question. In addition, in response to the point that a slip-and-fall is not an extort – is not an Eighth Amendment violation just because it happens in prison, it's our position that this is not a typical slip-and-fall. This was not a prisoner who was simply walking freely and on a wet surface and fell. Because of the prison lockdown, Mr. Harrington was wearing – was forced to wear treadless slippers, was shackled with his hands behind his back, and the person escorting him through this known puddling of water was not holding his shoulder, as was the standard practice. These conditions – these conditions cause it to rise to the extreme conditions and not make it an ordinary slip-and-fall. As to the 14th Amendment claim, I'd just like to point out a couple issues in the cases to resolve this conflict between the Norwood instruction and the Johnson case. First of all, in Norwood, the Court was very clear to make it – to make certain that it was understood what was being considered here. In the actual – the Court actually went out of its way in a footnote, in – at 1066 footnote 1, to state that only an Eighth Amendment outdoor exercise claim is before us on this appeal. We therefore express no view as to the race-based aspect of lockdowns or any equal protection claim. Norwood was very concerned – the Court there was – clearly was very concerned with preserving this distinction between Eighth Amendment claims and race-based 14th Amendment claims. And Johnson actually addressed – the Court noted this very same issue. They stated that the CDC, the California Department of Corrections, invites us to make an exception to the rule that strict scrutiny applies to all racial classifications and instead apply the deferential standard of view articulated in Turner, because its segregation policy applies only in the prison context. We decline this invitation. Now, counsel, in that same passage on page 1150, Justice O'Connor is saying we did not relax the standard of review for racial classifications in prison, in Lee, and we refuse to do so today. Rather, we explicitly reaffirm what we implicitly held in Lee, the necessities of prison security and discipline are compelling government interests justifying only those uses of race that are narrowly tailored. Why doesn't that apply here? I'm sorry? Why doesn't that apply here? Why does that – why is it not narrowly tailored? There's been no showing that the prison policy was narrowly tailored. The deferent standard was what was used by defense counsel in closing arguments. In fact, in closing arguments, the defense counsel specifically said that it was not up to the jury to second-guess prison officials, which is not the standard of strict scrutiny, which specifically says that a showing must be made that the least restrictive alternative was used to achieve that compelling government interest. And because there was no instruction as to that standard and that the government did not argue as to that standard, no showing has been made. And the deference instruction doesn't do it? Excuse me. I don't understand the question. The deference? The deference instruction doesn't solve that problem in your view? Solve the problem of the narrow – I'm trying to accommodate that that passage in light of the passage that you cited. I'm trying to put the second passage in context with the first. And it seems to me that what the trial judge was trying to do here was to comply with Johnson. Johnson is clear that the compliance is not through deference, but through a – the narrowly tailored standard, that there are conditions in prisons where, with a proper showing, prison officials are able to demonstrate that they have chosen the least restrictive alternative to address any safety or security issues the prison may be facing, that that should be done through the strict scrutiny standard and not through a lesser standard of deference, which may apply to some other constitutional rights in prisons, such as Eighth Amendment claims, but it's been made very clear does not apply to a race-based classification. Okay. Anything further? No, thank you. Thank you, counsel. The case just argued will be submitted for decision.
judges: O'scannlain, Thomas, McKeown